CONRADE SEIBEL, Respondent, *vs.* FERDINAND SIEMON, Appellant.

1. *Mechanics Lien—Judgment—Removal of buildings—Action for Prevention—St. Louis County.*—If the owner of property in the County of St. Louis prevents the purchaser of a building thereon, under a judgment on a mechanic's lien, from removing the building, his proper remedy is an action for damages against the owner of the property.

| 52 | 363 |
| 65a | 438 |
| 52 | 363 |
| 146 | 593 |
| 52 | 363 |
| 82a | 232 |
| 52 | 363 |
| 166 | 56 |
| 52 | 363 |
| 172 | 595 |

*Appeal from St. Louis Circuit Court.*

*Slayback & Haeussler*, for Appellant.

If plaintiff has any rights by the sale, it is a legal title, and if so he must come into a court of law for relief.

*Edward C. Kehr*, for Respondent, cited : Deters vs. Renick, 37 Mo., 599 ; Otley vs. Haviland, 36 Miss., 19 ; Raymond vs. Ewing, 26 Ill., 343 ; North Presbyterian Church vs. Jevne, 32 Ill., 214 ; Whitenack vs. Noe, 3 Stockton, 321 ; Newark L. & C. Co. vs. Morrison, 2 Beasly, 133.

The court may grant any relief consistent with the case made, and the allegations of the petition. (Northcraft vs. Martin, 28 Mo., 469 ; Easley vs. Prewitt, 37 Mo. 361.)

VORIES, Judge, delivered the opinion of the court.

This suit was brought in the St. Louis Circuit Court by Seibel, the plaintiff, a purchaser under a judgment to enforce a mechanic's lien, against the owner of the lands upon which the erection or improvements were made, to recover the value of the improvement made, or to otherwise enforce his rights. The petition filed by plaintiff is as follows :

"Plaintiff states that by deed dated the 16th day of November, 1863, and recorded in the Recorder's office of St. Louis County, Theobald Eckerle became the owner in fee of a lot or parcel of land in the city and County of St. Louis, and State of Missouri, hereinafter specifically described, that on the same day said Eckerle and wife, by deed bearing that date, conveyed said real estate to D. Robert Barclay in trust to secure to Elihu H. Shepard or order the payment of certain promissory notes in said deed described, that among other things in said deed of trust contained it was provided, that

if said notes should be paid according to their tenor or effect, then said deed should be void, but that if default were made in the payment thereof, then said deed should remain in force, and the said Barclay might proceed to sell said property in manner as said deed directs, and deliver to the purchaser thereof a deed in fee simple of the property sold.

"Plaintiff states, that said Eckerle entered into possession of said premises about the time of his said purchase, and thereafter continued in the possession and actual occupancy thereof, until about the 31st day of May, 1871. That whilst so in possession of said premises as the owner thereof, said Eckerle caused a certain building 43 feet in length by 34 feet in width, and about 26 feet deep, constructed of rock and brick, and intended for an ice house, to be erected on said premises, that he commenced work on said building on or about the 1st day of October, 1870, and finished the same on or about the 8th day of January, 1871, and that between said dates, and at his instance and request, Andreas Uhri, Conrad Seibel, Theodore Bloess, Henry Hilsdorf and Clemence Knupfer, each contracting severally with said Eckerle, did work and labor upon, and furnished materials for said building, that their respective demands for the work done and the materials so furnished remaining unpaid, they did each on or about the 28th day of January, 1871, file and perfect in the Clerk's office of the Circuit Court of St. Louis County, a lien upon the above described property, in accordance with the statute in such case made and provided.

"Plaintiff states, that on the 3rd day of February, 1871, the said Andreas Uhri, Conrad Seibel, Theodore Bloess, Henry J. Hilsdorf and Clemence Knupfer, did each institute suits upon his said demand and lien in the Circuit Court of St. Louis County against the said Eckerle, and the property hereinafter described, and that in said several suits such proceedings were thereafter had in said Circuit Court, that on the 18th day of May, 1871, said several plaintiffs recovered judgments against said Eckerle for the amount of their respective demands and costs, with special judgment and execution upon their said

lien against the premises, hereinafter described, that said several judgments remained in full force, not in anywise vacated or reversed, and that on the 5th day of August, 1871, an execution in conformity therewith was issued on each of said judgments from the Clerk's office of the Circuit Court of St. Louis County, directed to the sheriff of said County, and returnable to the October term, 1871, of said court, that under and by virtue of said several executions, said sheriff, not being able to find any other property belonging to said Eckerle, did levy upon and seize the property charged with said several liens and in said executions described as follows, to-wit: A certain building 43 feet in length by 34 feet in width and about 26 feet deep, constructed of rock and brick, and intended for an ice house, and the ground whereon the same is situated, being the following described lot or parcel of land in the city and County of St. Louis, and State of Missouri, to-wit: Being a lot of land situated in block numbered sixty-five of the St. Louis Commons, commencing at a stone ten feet south of the north line of said block, and twenty-five feet eastwardly from the west line of said block, thence running eastwardly parallel with the north line of said block one hundred and seventy-five feet, thence southwardly along Capital Avenue, on a line parallel with the west line of said block six hundred feet and seven inches, thence westwardly along Magazine street, in a line parallel with the north line of said block one hundred and seventy-five feet to a strip of ground twenty feet wide, to be used as an alley, thence northwardly parallel with the west line of said block and twenty feet eastwardly from it six hundred feet and ten inches to the place of beginning, being block No. 1,665 of the city of St. Louis, and having advertised the same according to law, said sheriff did on the 2nd day of September, 1871, expose said premises for sale, and the plaintiff being the highest and best bidder therefor, said property was sold to him by said sheriff, who, on the same day, executed and delivered to the plaintiff a deed for the same, which is herewith shown to the court.

"And plaintiff states that previous to the date last aforesaid,

to-wit: on the 31st day of May, 1871, the real estate herein before described, was exposed to sale under the deed of trust of November 16th, 1863, herein before recited, with the announcement that it was sold subject to all mechanic's liens and all taxes on the same, and that at said sale the defendant, Ferdinand Siemeir, became the purchaser thereof, subject to such liens and taxes; that he immediately thereafter entered into possession of said premises, including said ice house, and on the 13th day of September, 1871, was, and now is in possession of said building.

"Plaintiff says he is advised that the several liens hereinbefore recited attach to the building known as the ice house, herein before described, in preference to the prior lien of the deed of trust first herein recited, and under which the defendant Simeon derives title to said real estate, if any he have, and that by reason of the several facts aforesaid plaintiff, on said 2nd day of September, 1871, became and now is the owner of said building, and entitled to remove the same, that on the 14th day of September, 1871, he demanded of the defendant permission to enter said premises for the purpose of removing said building, and demanded of him possession of said building, with a view to remove the same, but that defendant then refused and still refuses to permit him so to enter upon said premises or into said building to remove the latter, but that said defendant Siemon has converted and appropriated said building to his own use.

"Plaintiff states, that said building is, and on said 13th day of September, 1871, was, of the value of three thousand dollars, that the monthly rents and profits thereof are fifty dollars.

"Plaintiff states that on the 25th day of July, 1871, the defendant Siemon and Auguste, his wife, executed and delivered their certain deed of date aforesaid, and recorded in the Recorder's office of St. Louis County, in book 435, page 292, by which they conveyed the real estate hereinbefore described to the defendant, Haeussler, in trust, to secure to the defendants, Leonard Benecke, Adolph Bush, and Morris Lippman, the payment of certain notes in said deed mentioned, and the

defendants Haeussler, Benecke, Bush and Lippman now claim an interest on said premises by virtue of said deed."

The plaintiff then prays for a judgment for three thousand dollars, the value of the ice house, with interest thereon, or that the court ascertain the value of the building and adjudge and decree the same to plaintiff with interest, &c., and to adjudge and decree a sale of the real estate described with the buildings and improvements thereon, and that said premises be sold, and of the proceeds, that plaintiff be paid the value of the building, and the remainder paid to defendants according to their respective rights, &c.

The defendant Siemon demurred to this petition, because it did not state facts sufficient to constitute a cause of action. Because from the showing in the petition, plaintiff had no other remedy in law than by an action for the claim and delivery of the materials in said ice house, or an action at law against the defendant for the conversion of the materials of which it is composed. That plaintiff could only have a right to remove the house in a reasonable time, &c.

The other defendants filed a separate demurrer which it is not necessary to set out.

The demurrers were sustained at Special Term, and plaintiffs failing to amend or further plead, final judgment was rendered against him, from which he appealed to the General Term of said court. Afterwards at the General Term of said court, the judgment of the Special Term was in all things reversed and the cause remanded ; from this last judgment the defendants appealed to this court.

There was some controversy in the argument of this case, whether the action was an ordinary action at law, or was a petition in the nature of a bill in equity, addressed to the court as a court of chancery.

It was contended by the plaintiff, that although in the prayer of the petition he prayed alternately both for legal and equitable relief, that the prayer did not determine the nature of the action, but that the court would look at the body of the petition, and from that determine its nature and give the

appropriate relief. Testing the petition in this case by this rule, it is essentially an equity proceeding, the whole bill being framed with a view to equitable relief.

This being the case, if it is shown in the bill by the facts charged and relied on, that the plaintiff has a plain and adequate remedy at law, then his bill in equity must fail, notwithstanding he may as one part of the prayer in his petition ask for a judgment at law, for as we have before stated, it is the body of the petition and not the prayer, that determines its character.

The plaintiff howerer insists, that the facts stated in his petition entitle him to equitable relief, and we are referred to the cases of Andry vs. Guyol, *et al.*, 13 La., 8, and Raymond vs. Ewing, *et al.*, 26 Ill., 329. The first named case was brought by a mortgagee to sell the mortgaged premises, and one Miller intervened, and claimed that he had a special lien on the proceeds of sale for an amount due him for lumber and materials furnished to the defendant or mortgagor, for building a house on the land, which was sold by the Sheriff upon foreclosure of the mortgage. It was held by the court, that inasmuch as the house had been sold by the mortgagee upon which Miller's lien attached, that he had a right to intervene and receive a part of the proceeds of the sale. The other case was a case of Ewing *et al.*, who filed a bill to enjoin the sale of certain premises, upon which they had a mortgage, under a prior decree of the same court under a proceeding to enforce a mechanic's lien. The charge in the bill is, that the lien of the plaintiff's mortgage is prior in point of time, and a superior lien to that of Miller. The court held in that case, as Ewing & Co. were not parties to the lien suit, they were not bound by the decree, and might contest it by the mode adopted. And the court further expressed the opinion, that as the court had possession of the case for the purpose of granting the injunction, it should have gone on and settled the rights of the parties. " The deed of trust constituted a first lien upon the premises and improvements thereon at the time the trust deed was recorded, but the statute gives the

mechanic and material men, liens paramount to the trust deed upon the improvements made by them upon the premises, and the court should have ascertained the value of these improvements as compared with the whole value of the premises, and given to the petitioners in the lien suit their due proportion of the proceeds of the premises according to the provisions of the statute." It will be observed, that this last case is very different from the one under consideration. There the court enjoined the sale under the mechanics' lien, so as to settle the rights of two contending liens on the premises before any sale was made, so that each party should get their proper proportion of the proceeds of the property. The court would not permit a sale to go on, and the proceeds to be disposed of, until the rights of the parties to the proceeds were fixed, and in this way to prevent a sacrifice of the property, and a cloud being placed on the title. In the case we are considering, the mischief is done, if mischief it is, a sale has taken place both under the deed of trust and under the mechanics' lien, the proceeds of each sale have been disposed of, there are no equities to settle; at least there are none if the plaintiff's bill be true, and it is not denied. The defendant, who purchased under the deed of trust, not having been made a party to the suits to foreclose the mechanics' liens, might contest the regularity or fairness of the judgments rendered therein, but until he does so, the judgments are not void, but are presumed to be binding, at least in the present attitude of this case,—the demurrer admitting the allegations in the petition,—the judgments under which plaintiff purchased, are taken to be binding. (Schaffer vs. Lohman, *et al.*, 34 Mo., 68.)

The 3rd section of our statute concerning Mechanics' liens provides, that, " The lien for the things aforesaid or work, shall attach to the buildings, erections or improvements for which they were furnished, or the work was done, in preference to any prior lien or incumbrance or mortgage upon the land upon which said buildings, erections, improvements or machinery have been erected or put; and any person enforcing such lien may have such building, erection or improvement

sold under execution, and the purchaser thereof may remove the same within a reasonable time thereafter."

This act it will be seen, is very different from the act of 1856, regulating Mechanics' liens in St. Louis County, under which last named act the case of Bridwell vs. Clark, 39 Mo., 170, referred to by defendant, was decided ; that act is now repealed, and the section above quoted is now the only law applicable to such case. If then the plaintiff, by virtue of his purchase at execution sale acquired any right, it was the right to remove the building upon which the mechanics' lien attached. If the defendant Siemon, wrongfully prevented him from removing the house, his remedy would be an action to recover damges for the wrongful act of defendant.

The court at Special Term therefore properly sustained the demurrers of the defendant, and rendered judgment thereon.

The judgment of the General Term, reversing the judgment of the Special Term and remanding the cause, ought to be reversed.

The other Judges concurring, the judgment of the General Term is reversed.